————o————

HENRY C. ROGERS, Respondent, *vs.* THOMAS J. BROWN, *et al.*, Appellants.

1. *Equity—Instructions.*—In passing upon cases in equity the Supreme Court need not consider the instructions.

2. *Limitations—Statute applies to actions at law and in equity.*—The statute of limitations now in force is applicable to all civil actions, whether they are such as have been heretofore denominated suits in equity or actions at law.

3. *Statute of limitations—Will run against heir, notwithstanding disabilities, when.*—When the statute of limitations begins to run against the ancestor, it will continue to run against the heir, notwithstanding that the heir may be under some statutory disability at the time of the descent cast.

4. *Statute of limitations—Execution sale—Purchaser must commence suit, when.*—The right of an execution debtor to real property held adversely to him,

| | |
|---|---|
| 61 | 187 |
| 96 | 338 |
| 61 | 187 |
| 105 | 478 |
| 61 | 187 |
| 52a | 659 |
| 61 | 187 |
| 122 | 666 |
| 125 | 126 |
| 61 | 187 |
| 157 | 352 |
| 61 | 187 |
| 163 | 110 |

may be sold under execution, and the purchaser must institute his action within ten years from the time the right of action accrued to his grantor through the execution sale.

5. *Equi y—Action by purchaser at execution sale to set aside deed for frauds must be begun within ten days after filing of deed—Section 1, 410 and 24, Art. II, Statute of Limitation considered.*—In suit by a purchaser at execution sale to set aside a conveyance of land made by the judgment debtor, plaintiff is governed by the same limitation law with the creditors of defendant, and defendant will be regarded as. holding adversely to them from the date of recording his deed. And the action for relief, no "improper act" of defendant preventing its commencement being pleaded or proved, (Wagn. Stat., 920, § 24) must be commenced under § 1, art. II, of the statute of limitations (Wagn. Stat., 915) within ten years after the filing of the conveyance for record.

The statute (Wagn. Stat., 918, § 10, subd. 5) authorizing actions for relief on the ground of fraud, to be brought within five years after discovery—the discovery having been made within ten years after commission of the fraud—has no application to actions for the recovery of real property. And the equity doctrine stated in Hunter vs. Hunter (50 Mo., 445), that the statute will not commence running till the discovery of the fraud, no longer applies to a case like the above, since the adoption of the code and the present statute of limitations.

## *Appeal from Pettis Circuit Court.*

*Crandall & Sinnett, with Draffen & Williams*, for Appellants.

This action being brought more than ten years after the record of Collet's deed, is barred by the statute. (Wagn. Stat., 915, § 1; Hunter vs. Hunter, 50 Mo., 445.) The present statute was intended to embrace all actions whether legal or equitable, and superseded the rules of common law and equity. (Hunter vs. Hunter, *supra ;* Martin vs. Smith, 1 Dill., 85 ; Relfe vs. Eberly, 23 Iowa, 467 ; Williams vs. Allison, 33 Ia., 279 ; U. S. vs. Mallard, 4 Benedict [U. S. Dist. Ct.], 459, 465 ; Pitcher vs. Flinn, 30 Ind., 202 ; Bank v. Dalton, 9 How., 522 ; Walker vs. Bacon, 32 Mo., 144.)

Admitting that the statute commenced running only with discovery of the alleged fraud, the fraud was consummated at the time of the record, and plaintiffs had notice of the fraud, if any. (Thomas vs. Matthews, 51 Mo., 101.) Notice to the creditors, under whose judgment plaintiff claims, was notice to him.

*Phillips & Vest,* for Respondent.

This is a suit to set aside a fraudulent sale of land, and to vest the title in plaintiffs. And the statute did not begin to run till the discovery of the fraud which was shown to be on or about March 1st, 1867, and was less than ten years after the deed of Collet to Brown. This question was fully discussed, and the law so declared, in Hunter vs. Hunter. (55 Mo., 445; Wagn. Stat., 917, § 10, subd. 5.)

Knowledge of the transfer from Collet to Brown, did not constitute a discovery of the fraud. To that end in equity there should also be a knowledge of the facts which made it fraudulent. (Martin vs. Smith, 1 Dill. Ct. Ct. Rep., 85 ; Godbalt vs. Lambert, 8 Rich. Eq., 155–164.) Under the statute, (§ 10, subd. 5, *supra*) the " party aggrieved" has his action if the fraud is discovered within ten years from perpetration. Here the party aggrieved is not an original creditor, but the purchaser. To hold that he would be affected with whatever private notice a judgment creditor might have, would deter purchasers and destroy the vendibility of property under execution.

The instruction of the court given at its own instance, put the question of diligence in discovering the fraud fairly before the jury.

Hough, Judge, delivered the opinion of the court.

This was a suit instituted for the purpose of setting aside a conveyance of certain lands alleged to have been made in fraud of creditors. The petition on which the cause was tried, charged that on the 23d day of October, 1857, the defendant (Collet), then a resident of Moniteau county, was seized of an estate in fee simple, in certain lands lying in that county ; that at said date he was largely indebted and in failing circumstances, and that for the purpose of defrauding his creditors he did, on the 24th day of October, 1857, convey the said lands to his son-in-law (Brown), who was made a party defendant, for the pretended consideration of three thousand dollars, and that Brown was a party to the fraud.

The petition further stated, that on the 12th day of March, 1862, four several judgments were rendered against Collet in the circuit court of Gasconade county, and that on the 26th day of December, 1866, executions were issued on said judgments, directed to the sheriff of Moniteau county, which were duly levied upon the lands in controversy, and at a sale thereunder, the plaintiff became the purchaser. It was further alleged that the debts which were the foundations of the judgments were contracted by Collet long prior to the fraudulent conveyance made by him to Brown; that the original petition in the cause was filed on December 10th, 1867, and that the facts constituting the fraud, and upon which plaintiff based his right to relief, were first discovered by plaintiff on or about the 1st day of March, 1867. The prayer of the petition was that the conveyance from Collet to Brown should be set aside, and that the title to the land therein described, should be vested in plaintiff.

The defendants answered separately, denying all fraud and bad faith, alleging that the consideration mentioned in the deed had been paid, and for a further defense set up and relied upon the statute of limitations as a bar to the plaintiff's suit.

At the trial, issues were framed and submitted to a jury, who found that Collet made the deed in question with intent to hinder, delay and defraud his creditors; that Brown was privy to the fraud intended by Collet in making said deed; that no valuable consideration was paid by Brown to Collet for the lands described in said deed; that at the date of said conveyance Collet was indebted as alleged in the petition, and that plaintiff's cause of action accrued within ten years next before the commencement of the present suit.

The court adopted the finding of the jury, and rendered a decree as prayed in the petition, and defendants bring the case here by appeal.

We have carefully examined the testimony contained in the record, and think it is amply sufficient to sustain the finding of the jury on all the issues submitted to them, except the

one relating to the statute of limitations. It having been shown by the testimony that the conveyance from Collet to Brown was made on the 24th day of October, 1857, and recorded on the 26th day of October, 1857, and that the plaintiff did not discover the facts constituting said conveyance a fraudulent one until about the first day of March, 1867, and that the present suit was not instituted until the 10th day of December, 1867, more than ten years after the conveyance from Collet to Brown, and the date of the record thereof, the question presented for our determination is, whether the plaintiff's suit is barred by the statute of limitations.

As this proceeding is in the nature of a suit in equity, we shall discuss this question without reference to the instructions given by the court to the jury on the subject.

It has been several times decided by this court, that the statute of limitations now in force is applicable to all civil actions, whether they are such as have been heretofore denominated suits in equity or actions at law. It has also been held in the cases of Bobb vs. Woodward (50 Mo., 103) and Hunter vs. Hunter (*Id.*, 445) that the 5th subdivision of the 10th section of the statute of limitations fixing the period of five years for the commencement of actions "for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud," applies solely to civil actions other than those for the recovery of real property. The statute itself is explicit upon this point, and scarcely needed the aid of judicial interpretation to make this certain. In the case of Hunter vs. Hunter, *supra*, it was held in a suit to set aside a fraudulent conveyance of land, and for the possession of the land, that the limitation of ten years prescribed by the first section of the statute, for the institution of suits for the recovery of lands or for the recovery of the possession thereof, would apply. The same limitation is applicable to the present action. In that case it was further said, that "when the case is one of fraud, the statute will in no case commence to run till the

discovery of the fraud. This was always the equity doctrine, and is still the doctrine under our code." The plaintiff in this case contends that as he did not discover until March 1st, 1867, that the conveyance made by Collet on the 24th of October, 1857, was fraudulent as to the creditors of Collet, he was entitled to ten years from March 1st, 1867, in which to institute his action to set said conveyance aside. In this State, as has been before stated, the statute of limitations applies to all civil actions, and our courts have no more authority to engraft upon the statute exceptions extending the time for bringing suits, in cases which were formerly cognizable only in equity, than they have to interpolate exceptions similarly affecting actions at law. In one of the sections of the statute relating to personal actions, the equitable exception as to fraud has, as we have seen, been incorporated in a modified form, and a limit of five years after the discovery at any time within ten years of the facts constituting the fraud, has been fixed for the commencement of actions when relief is sought on the ground of fraud. The limitation of ten years applicable to suits for the recovery of real property has its statutory exceptions also. The fourth section of the statute provides that if any person entitled to commence an action for the recovery of real property, or to make an entry, be, at the time such right or title shall first descend or accrue, either within the age of twenty-one years, or insane, or imprisoned on any criminal charge, or in execution upon some conviction of a criminal offense for any time less than life, or a married woman, the time during which such disability shall continue shall not be deemed any portion of the time limited for the commencement of such action, or the making of such entry ; but the statute does not say that if any person entitled to commence an action for the recovery of real property on account of any fraud, shall for any time be ignorant of the facts constituting such fraud, that the time of such ignorance shall not be deemed to be a portion of the time limited for the commencement of such action, and that such action may be commenced within ten years after the discovery of the fraud. The only exception applicable to suits for realty, not in-

corporated in the fourth section above quoted, which could possibly have any relation to the point under discussion, is to be found in the 24th section, which is as follows: "If any person, by absconding or concealing himself, *or by any other improper act,* prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." This section is applicable to both real and personal actions. The mode of sub-dividing the statute, adopted in the revision of 1855, renders this more apparent than the plan adopted in the general statutes of 1865.

There was no statute of limitations in England prior to the year 1833, so far as we have been able to learn, which applied to proceedings in equity. Prior to that time the statute related only to legal remedies, and did not bind courts of equity in cases solely cognizable therein, though it was adopted by them as a rule to assist their discretion; and in order to countervail the machinations of fraud they interfered to remove the bar of the statute and let in the defrauded party to assert rights of which he would otherwise have been deprived. They accordingly held that in cases of fraud or mistake the statute would begin to run only from the time of the discovery of such fraud or mistake. In the year 1833, however, Parliament passed an act entitled "an act for the limitation of actions and suits relating to real property and for simplifying the remedies for trying the rights thereto," the object of which was, as stated by Sir R. Malins, V. C., in Chetham vs. Hoare, 9 Law Rep. Eq. Cas.: "To make the time, twenty years, a conclusive bar to all rights to land; that a person who claims land, whether it is by an action of ejectment, or by an equitable title, by virtue of proceedings in this court, must prove that he or those under whom he claims have been in possession within twenty years, or that enlarged period which is given upon the existence of disabilities, in no case exceeding forty years from the time when the right to possession accrued." This act was, by its terms, made applicable to suits in equity as well as to actions at law.

Our statute is similarly applicable, as it embraces all "civil actions," and this term the statute declares shall include every form of proceeding for the enforcement or protection of private rights, and the redress or prevention of private wrongs. In the 26th section of the English statute, however, is the following provision : "That in every case of a concealed fraud the right of any person to bring a suit in equity for the recovery of any land or rent, of which he, or any person through whom he claims, may have been deprived by such fraud, shall be deemed to have first accrued at and not before the time at which such fraud shall or with reasonable diligence might have been first known or discovered." The plaintiff in the case of Chetham vs. Hoare, *supra*, sought, long after the general period fixed by the statute had elapsed, to recover possession of certain estates, the evidence of his right to which, he alleged, had been concealed from him by fraud, and his right to be heard at all was placed by the Vice Chancellor solely on the provision in the 26th section above quoted. We conclude, therefore, to use the language of Chief Justice Marshall, in the case of McIvor vs. Ragan (2 Wheat., 29)—a case analogous in principle to the one at bar, by reason of the application of our statute to all civil actions—that "wherever the situation of a party was such as, in the opinion of the legislature, to furnish a motive for excepting him from the operation of the law, the legislature has made the exception. It would be going far for this court to add to those exceptions. ( *Vide* also Walker vs. Bacon, 32 Mo:, 144 ; The United States vs. Maillard, 4 Benedict, [U. S. Dist. Ct.] 459, 465 ; Pilcher vs. Flinn, 30 Ind., 202 ; Bank vs. Dalton, 9 How. U. S., 529.)

Prior to the adoption of the code and the present statute of limitations, the equity doctrine, as stated in the case of Hunter vs. Hunter, undoubtedly obtained ; but we do not conceive it to be the rule now, farther than it may be found to have been incorporated in the provisions of the 24th section above quoted. No issue having been made by the pleadings, nor any evidence offered, as to any " improper " action

on the part of the defendants, preventing the commencement of an action, we must take it for granted that there was none, and the question recurs, when did the statute begin to run against the present action?

It is a familiar principle that when the statute begins to run against the ancestor, it will continue to run against the heir, notwithstanding the heir may be under some statutory disability at the time of descent cast. So, too, the right of an execution debtor to real property held adversely to him, may be sold under execution, and in such cases it has always been held that the purchaser at such sale must institute his action within ten years from the time the right of action accrued to his grantor through the execution sale. In other words, when the statute once begins to run, it continues to run, save in the cases specially excepted by the statute. The same rule obtains in a case like the present, and the plaintiff must be held to be barred in precisely the same time in which the creditors of Collet would have been barred had they become the purchasers under their execution, as he has succeeded to their rights by the purchase of Collet's interest in the land. (Bobb vs. Woodward, 50 Mo., 103.) The plaintiff seeks to divest Brown of the title held by him upon a trust resulting to the benefit of the creditors of Collet. Brown claims adversely to the right purchased by the plaintiff under execution, and as the purpose of the present suit is to make Brown a trustee against his will, he should be treated as holding adversely to the creditors of Collet from the time his deed was recorded, or from the time said creditors had actual notice of the conveyance, whichever first occurred. While the creditors of Collet acquired no right to institute any proceedings to set aside his fraudulent conveyance, prior to the date of their judgments against him, still such right might have been acquired by them by the institution of attachment proceedings, based upon said conveyance made by Collet with the intent to hinder and delay them in the collections of their debts (Wagn. Stat., 192, § 51), and as they are chargeable by law with notice of the recorded conveyance, and could

thereafter have instituted such proceedings, the statute must be held to have commenced to run against them on the 26th day of October, 1857, the day on which the deed was recorded; and as it continued to run against the plaintiff after his purchase, his action is therefore barred.

The judgment of the circuit court will therefore be reversed. The other judges concur, except Judge Vories, who is absent.