LUELLA GILLESPIE ET AL., APPELLEES, V. PHILIP H. COOPER ET AL., APPELLANTS.

FILED APRIL 26, 1893.   No. 4794.

1. Creditor's Bill :` STATUTE OF LIMITATIONS. Under section 12, Civil Code, an action for relief on the ground of fraud can only be commenced within four years after a discovery of the facts constituting the fraud.

·2. ———: ———: FRAUDULENT CONVEYANCES: ATTACHMENT OF PROPERTY FRAUDULENTLY CONVEYED. The cause of action mentioned in said section is the fraudulent act complained of; and the cause of action accrues when discovered, and it is discovered when the party seeking relief is in possession of sufficient facts to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to a discovery of the fraud; and the statute begins to run against a creditor from the discovery of the fraudulent act on the part of his debtor, whether the creditor's claim has been reduced to

judgment or not, as he is not limited to a creditor's bill in order to obtain relief on the ground of fraud, but may attach the property fraudulently conveyed. IRVINE, C., dissents.

**3.** ———: ———: ———: DISCOVERY OF FRAUD BY CREDITOR. A party defrauded must be diligent in making inquiry. Means of knowledge are equivalent to knowledge. A clue to the facts which, if followed up diligently, would lead to a discovery, is, in law, equivalent to a discovery. Accordingly, where a party was known by her creditors to have recently failed in business and to be insolvent, conveyed all her real estate by deed recorded October 28, 1884, in the county where she resided; and she, in conversation with her creditors at that time, said that the object of the conveyance was to beat her foreign creditors; that she had been advised to put her property out of her hands; that she intended to put her property in other hands until she could settle matters; that she had made arrangements by which she could pay all her home creditors; that there were some debts she did not feel bound to pay; that the object of the deed was to secure a debt to the grantee, and the surplus to be paid her; it was *held,* that these facts were a discovery by the creditors on the date of the recording of said deed that the same was fraudulent.

**4.** ———: ———: ———: ———: REGISTRATION OF FRAUDULENT DEED. It seems that the fraud, within the meaning of said section 12, is discovered when the fraudulent deed is recorded in the county where the debtor lives.

**5.** ———: ———: ———: ———. On the 28th day of October, 1884, C., being largely indebted to various parties, conveyed all her property, four city lots, to one R., with a secret agreement between them that R. should sell the lots and retain the amount of the debt owing him by C., and return the surplus property, or proceeds thereof, to C., or such person as she might designate. *Held,* That this was a fraud on the other creditors of C., but, as this fraudulent conveyance was discovered by them on the date of its record, their suit to set it aside, commenced more than four years thereafter, was barred; but where it also appeared that while R. held the title to the said four lots, he agreed with C. that if she would find a purchaser for, or sell them, he would pay her, as commissions, all that remained of the lots or their proceeds after the payment to him of her debt. Two of the lots were sold, R.'s debt paid, and at C.'s request the remaining two lots were conveyed to her husband without consideration. *Held,* That the two lots thus conveyed were C.'s property, acquired from R. by purchase, and were conveyed to C.'s husband for the purpose of defrauding her creditors. *Held further,* That this was

not a continuation or consummation of the fraud of October 28, 1884, but a new and independent one, and as the suit of C.'s creditors to set aside the conveyance of October 28, 1884, also assailed this conveyance of the two lots purchased by C. from R., and conveyed to her husband, and was commenced within four years of the recording of such conveyance, it was not barred as to the lots purchased by C. of R.

APPEAL from the district court of Lancaster county. Heard below before CHAPMAN, J.

*Lamb, Ricketts & Wilson,* for appellants.

*Harwood, Ames & Kelly, Stevens, Love, Cochran & Teeters,* and *W. S. Summers,* for appellees.

RAGAN, C.

In 1883 the appellant Sarah Cooper was the owner of lots Nos. 4, 5, 6, 7, 8, and 9, in block No. 124, in the city of Lincoln, and, together with her husband, the appellant Philip H. Cooper, occupied of said lots as a homestead Nos. 8 and 9. Mrs. Cooper was engaged in the mercantile business, and about October 1, 1884, failed, owing appellees debts contracted on the faith and credit of her property and business. On January 8, 1883, Mrs. Cooper conveyed by quitclaim deed said lots Nos. 8 and 9 to the State National Bank of Lincoln, to secure the payment of a debt she owed it. On January 7, 1884, she was still indebted in the sum of $4,500 to said bank, as an evidence of which said debt she executed and delivered to it her note due in sixty days, on which, prior to October of said year, there were indorsed $1,300. At this date all these lots were incumbered by a mortgage of $3,500, held by one Bowles. On October 27, 1884, Mrs. Cooper and her husband, by a warranty deed, and for the expressed consideration of $5,200, conveyed to John R. Richards, then president of said bank, four of said lots, namely, Nos. 4, 5, 6, and 7. This deed contained this clause: "The party

of the second part, as a part of the purchase money of
said premises, agrees to pay and have applied on a certain
mortgage executed by the parties of the first part to one
Kate Bowles the sum of $2,000, and which said mort-
gage also covers lots 8 and 9 in said block, and is to secure
$3,500, and is recorded in book V of mortgages, in Lan-
caster county, Nebraska. The balance of said mortgage,
being $1,500 and interest, the parties of the first part are
to pay, and if not paid and is enforced by foreclosure, said
lots Nos. 8 and 9 are to be first sold and the proceeds to be
applied to the payment of said balance of $1,500 and in-
terest." On the day of the execution of this deed to
Richards the State National Bank executed and delivered
to Mrs. Cooper a quitclaim deed for the said lots Nos. 8
and 9 previously conveyed by her to the bank as security.

The deeds of Mrs. Cooper and husband to Richards, and
from the bank to Mrs. Cooper were both recorded October
28, 1884. About this last date Mrs. Cooper and husband
conveyed said lots Nos. 8 and 9 to one Hyde, and he at
once conveyed them to appellant Philip H. Cooper, who
thereupon gave his wife a written receipt, or paper reciting
that he accepted said conveyance from Hyde in full pay-
ment of $1,300 before then loaned by Mr. Cooper to his
wife, and agreeing to hold said lots as the homestead of the
family. It appears that this $1,300 was the money in-
dorsed on the $4,500 note.

Some time after the date of the deed from Mrs. Cooper
and husband to Richards he was succeeded as president of
the bank by one Brown, and at that time Mr. Richards
conveyed said lots Nos. 4, 5, 6, and 7 to him, Brown.
About April 1, 1886, Mr. Brown sold and conveyed two
of said lots, namely, lots Nos. 4 and 5, to one Patrick for
$4,500; and, on April 14 of the same year, Brown con-
veyed to appellant Philip H. Cooper the other two lots,
namely, lots Nos. 6 and 7, the consideration expressed in
the deed being one dollar.

The appellees brought this suit, a creditor's bill, in the district court of Lancaster county, alleging their judgments against Mrs. Cooper; that the debts on which they were based were contracted while she was owner of the record title of said lots Nos. 4, 5, 6, 7, 8, and 9, and on the faith and credit of the same; her insolvency; that said lots Nos. 8 and 9 were of the value of $9,000, the homestead of herself and husband; that they had conveyed them to Hyde and caused him to convey them to Philip H. Cooper without consideration and for the express purpose of defrauding the creditors of Mrs. Cooper. As to said lots 4, 5, 6, and 7, appellees in their amended petition alleged that on October 27, 1884, the appellant Mrs. Cooper was indebted to the State National Bank of Lincoln in the sum of $3,200, and to secure the payment of the same she and her husband conveyed all said lots to said Richards, president of said bank, and that it then was, and at all times prior and subsequent thereto continued to be, well understood and agreed by and between the said Coopers and the said Richards and the bank of which he was president that Richards received said deed and the title to said lots in trust only and by way of mortgage to secure an indebtedness of $3,200 from the said Sarah Cooper to said bank, and that upon the payment of said indebtedness, said lots should be reconveyed to the said Sarah Cooper or to such person as she might direct; or that in case said lots should be sold, that the bank should be first paid out of the proceeds of the sale, and the residue, if any, should be paid over to the said Sarah Cooper, or to such person as she might direct.

Appellees further alleged that some time after that one Brown succeeded Richards as president of said bank, and that thereupon Richards conveyed said lots to Brown on the same terms under which they were conveyed to him by the Coopers, and that, in pursuance of the trust and agreement between the said Coopers and the said Richards

and Brown and the bank, in April, 1886, Brown sold of
said lots Nos. 4 and 5 to one Patrick for a sum of money
sufficient to pay the indebtedness of Mrs. Cooper to the
bank, and did, with the proceeds of said sale, pay off and
discharge Mrs. Cooper's indebtedness to the bank; and
thereupon, on the 14th of April, 1886, at the request of
Mrs. Cooper, and with the intention to hinder, delay, and
defraud her creditors, and without consideration, conveyed
said lots Nos. 6 and 7 to the appellant Philip H. Cooper.
The appellees further alleged that they had no knowledge
of the facts set forth in their amended petition as to the
fraudulent intent and purpose of the conveyance of the lots
by the Coopers until long after said conveyance. The
prayer was that all of the conveyances, so far as the same
affected said lots 6 and 7, be set aside, canceled, and an-
nulled.

The answer of the appellants alleged that as to lots 8
and 9 they were conveyed to the appellant Philip H.
Cooper, in consideration of the $1,300 which he had loaned
his wife, and which she had paid on the note held by the
State National Bank. As to lots 4, 5, 6, and 7, the an-
swer alleged that the deed made by the Coopers of said lots
to Richards on the 27th of October, 1884, was an absolute
sale and conveyance of the property, and made in good
faith. The appellants also pleaded the statute of limita-
tions, viz., that the cause of action of the appellees accrued
more than four years prior to the bringing of this suit.

The judgment of the court, found in the record, makes
no disposition whatever of said lots Nos. 4, 5, 8, or 9.
The court found and decreed, however, that the conveyance
made by the Coopers on the 27th of October, 1884, to
Richards of lots 4, 5, 6, and 7 was made to secure the
payment of $3,200, then owing by Mrs. Cooper to the
State National Bank, and in trust for Mrs. Cooper, with
an agreement on the part of Richards that after the debt
was paid the remaining property, or the proceeds of the

Gillespie v. Cooper.

sale of the property, if it should be sold, should be re-
turned to Mrs. Cooper, or to such person as she might des-
ignate; and that both the conveyance of October 27, 1884,
of Coopers to Richards, and the conveyance of April 14,
1886, of Brown to appellant Philip H. Cooper, were made
for the purpose of hindering, delaying, and defrauding
the creditors of Mrs. Cooper, and the court decreed that
the said conveyance of April 14, 1886, by Brown to
Cooper be set aside, and the property subjected to the pay-
ment of the debts of appellees. The court further found
that the appellees were ignorant of all said fraudulent
transactions and agreement and intent until within four
years prior to the bringing of this action.

The appellants filed the usual bond in the court below
and bring the case here on appeal.

The finding of the court, that the conveyance made by
the Coopers to Richards on the 27th of October, 1884, and
the subsequent conveyance of Brown to Cooper in April,
1886, were fraudulent and made for the purpose of hin-
dering and delaying the appellees in the collection of their
debts, is supported by the evidence. But we are of the
opinion that the finding of the court, that the appellees
were ignorant of both these fraudulent transactions until
within four years next prior to the bringing of their suit,
is not supported by the evidence in the record. This suit
was brought more than four years after October 28, 1884.
Now, when did appellees discover the fraud perpetrated
October 27, 1884, within the meaning of section 12 of the
Civil Code, as construed by the courts?

The parties all lived in the city of Lincoln, in Lancas-
ter county, Nebraska. The lots fraudulently conveyed
were situate in said county and city. The fraudulent
deed was recorded in said county and city October 28, 1884.
Mrs. Cooper had failed in business and was known to
be insolvent. The fraudulent grantors remained in pos-
session of the property conveyed to Richards. The ap-
pellees testify:

Mrs. Gillespie:

Q. You are one of the plaintiffs in this case?

A. Yes, sir.

Q. Are you acquainted with the defendants Cooper and his wife?

A. Yes, sir.

Q. How long have you known them?

A. I should say about fourteen years.

Q. Did you know or hear about the conveyance of Coopers to J. R. Richards?

A. Yes, sir; I did.

Q. Of the property in question in October, 1884?

A. Yes, sir.

Q. At that time Mrs. Cooper then was or had been in the grocery business?

A. Yes.

Q. It was about the time of the failure of that business, was it not?

A. Yes, sir.

Q. At or about that time, or immediately afterwards, did you have any conversation with Mrs. Cooper in reference to the transaction?

A. Yes, sir.

Q. State when and where that conversation was.

A. It was at Mrs. Cooper's house.

Q. On what date?

A. I could not say the date.

Q. With relation to the transaction, on what date?

A. It was the day that those deeds were to be made. I met her son and I think the attorney—I was not acquainted with the gentleman—as I went up.

Q. Was that this gentleman, Mr. ———.

A. I could not identify him now, but she told me that Mr. ——— had advised her to deed the property out of her hands.

Q. Where did that conversation occur?

A. At Mrs. Cooper's house.

Q. Did you have any further conversation with her at that time and at that place?

A. Yes, sir; she asked me if I had taken any action in the matter as soon as I went in, and I told her no; that I called to see her to see what she had to say about it, and she said they intended putting the property into Mr. Richards' hands until they could settle the matter and straighten themselves. She said of course she intended to pay me and she said she intended to fix it so the creditors of Willie could not get hold of it. And she said when that property was sold Mr. Richards had entered into an agreement with her that she would have all over and above her indebtedness to Mr. Richards, and that she would have ample means to pay all her debts of honor, as she termed them, when that was fixed up.

Q. Willie was her son?

A. Yes, sir.

Q. He had been conducting her business in the grocery?

A. Yes, sir; he had been conducting the grocery business.

Q. That was the business that failed about that time?

A. Yes, sir.

Q. That business was conducted in her name—it was her business?

A. Yes, sir; that was my understanding.

J. H. McClay:

Q. Where do you reside?

A. Lincoln.

Q. Are you acquainted with the defendants?

A. Yes, sir.

Q. You are one of the plaintiffs in this action?

A. Yes, sir.

Q. You may state whether you had any conversation with the defendants, or either of them.

A. I have had conversation with them at different times

about this matter. I have had conversation with Mrs. Cooper in reference to this matter in controversy.

Q. State when and where they were and what they were.

A. Very soon after her failure and the transfer of this property in these deeds offered heretofore.

Q. What was said?

A. It was after the quitclaim deed and prior to the 1884 deed; it was between that time; it was just after the failure of the grocery business that I had the conversation.

Q. Fix the date.

A. I could not do that. It was just after the failure of the grocery business. My conversation with Mrs. Cooper was about some money that she owed me that I had paid as security on a note, and she said she had made arrangements by which she could pay all her debts to the people here in Lincoln; that there were some debts that she did not feel bound to pay; she had plenty of property to pay them with. I asked her where the property was. She refused to tell me where it was. She said she had made such arrangements as would protect her interests and she thought it would protect the rest of us.

W. W. Holmes:

Q. You are one of the plaintiffs?

A. Yes, sir.

Q. You live in Lincoln?

A. Yes, sir.

Q. You are acquainted with the defendants?

A. Yes, sir.

Q. You have heard the testimony in this case so far?

A. Yes, sir.

Q. Did you at any time, about the time of the transfer or conveyance of these lots to Richards, have any conversation with the defendants, or any of them, in reference to it?

A. I had with Mrs. Cooper.

Q. When?

A. It was on Monday following the conveyance.

Q. What day of the week were the conveyances, do you know?

A. She said she had been up all night Sunday night making them.

Q. It was the day following that you had that conversation with her?

A. Yes, sir.

Q. Where was that conversation?

A. At her house.

Q. What was it?

A. She said she had turned the property over to Richards to beat her foreign creditors, and all the home creditors were to be paid.

Q. Was there any further conversation?

A. Yes, sir; I had a long conversation with her.

Q. State the substance of it as near as you can.

A. I don't know as she said anything more about that. She said she was most sick, she had been up all night.

Q. Did she say what the object of the transfer to Richards was, what office that was intended to perform?

A. It was to secure the bank; the bank was to be paid first.

Q. What was to become of the residue?

A. That was to go to her.

J. H. McClay recalled:

Q. Did you have any such conversation as that with Mrs. Cooper?

A. Yes, sir; I had that kind of a conversation with her, and she told me that the lands were hers after the bank had been paid off—the State National Bank was paid—the balance belonged to her.

Were these facts a discovery by appellees of the fraud of October 27, 1884, within the meaning of section 12 of the Civil Code and the construction placed thereon by the courts? Part of that section is as follows: "An action for

53

relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." The settled rule is that the party defrauded must be diligent in making inquiry; that means of knowledge are equivalent to knowledge; that a clue to the facts, which, if followed up diligently, would lead to a discovery, is in law equivalent to a discovery, equivalent to knowledge. (*Norris v. Haggin*, 28 Fed. Rep., 275, and cases there cited; *O'Dell v. Burnham*, 61 Wis., 562; *Kuhlman v. Baker*, 50 Tex., 630.)

In *Parker v. Kuhn*, 21 Neb., 413, this court said: "An action for relief on the ground of fraud may be commenced at any time within four years after the discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery."

*Hellman v. Davis*, 24 Neb., 793, was a creditor's bill, alleging that in 1873 the defendant was a member of an insolvent copartnership, and on said date caused certain lands to be purchased with his money and title taken in his wife's name for the purpose of defrauding his creditors; that the plaintiff had no knowledge of the fraud until within four years prior to the bringing of the suit. It appears from the evidence quoted in the opinion that the fraudulent deed was recorded in 1873; that the plaintiff knew that the defendant and his wife were living on the land, and that the defendant was insolvent, and the only other fact of the fraud that plaintiff had learned since its perpetration was that within four years before the suit was brought his attorney had told him his claim against the defendant could be made. Justice COBB, speaking for this court, with those facts before him, held that the action was barred by the statute of limitations, citing and affirming *Parker v. Kuhn*, 21 Neb., 413.

In *Wright v. Davis*, 28 Neb., 479, a creditor's bill, it was alleged that the defendant became indebted to the

plaintiff in the year 1868; that the plaintiff's claim was reduced to judgment, became dormant, and was revived in 1885; that the defendant, about the date of the incurring of the indebtedness, contemplated utter insolvency, and with a view to defraud his creditors purchased certain real estate with his own money and caused the title to the property to be taken in the name of his wife; that subsequently, in 1879 and 1880, she conveyed the real estate to certain other persons, and they afterwards reconveyed the same to her; that such conveyances by her and to her were made for the purpose of covering up and hiding the title, and that during all these times the defendant was the sole owner of the real estate.    The plaintiff also alleged that aside from what was shown by the records of Douglas county, the fraud was discovered and made known to plaintiff within a year prior to the bringing of the suit, and not before, and that the cause of action accrued upon the discovery of the fraud.    The plaintiff on the trial testified:

Q. You knew this land had been bought and stood in the name of Mrs. Davis?

A. I presume I did.    I don't think I ever looked at the records, but I was satisfied that was the case.

It also appears that he testified on the trial that he had seen the defendant frequently after the recovery of his judgment, had conversed with him about the payment of it, had received assurances that it would be paid, and that he was to be taken care of.    Chief Justice REESE, speaking for this court with these facts before him, said : " There is no question but that the plaintiff's right to apply the property to the payment of his claim was barred by the statute of limitations if the statute began to run upon the filing for record of the deed by which the real estate was finally conveyed to Mrs. Davis, for by section 12 of the Civil Code the statutory limit is four years after the discovery of the fraud."    He then cites *Helman v. Davis, supra,* and *Parker v. Kuhn, supra,* and continues : "By

these cases it is pretty well settled in this state that while a person against whom a fraud has been perpetrated has four years from the discovery of the fraud in which to commence his suit, yet the fraud will be deemed to have been discovered when such facts are known, either actually or constructively, as would amount to knowledge, or which would naturally suggest such inquiries as, if followed up, would lead to such knowledge. * * It clearly appears that the conveyances were made and placed on record at a time when the defendant was known to be insolvent; that defendant resided upon the land and made improvements thereon; * * * that it was claimed by some of the (deendant's) family and was charged by the record with knowledge of the condition of the title as it then appeared. * * * It appears from all the evidence that the plaintiff was fully aware of the financial condition of the defendant, and that the conveyances to his wife could not be otherwise than fraudulent. Or, if this cannot be said to have been fully established, that by the most superficial examination, suggested by facts within his knowledge, he might have had full and con p'ete knowledge of the condition of the title. * * * This was sufficient to cause the statute to run."

In *Laird v. Kilbourne*, 70 Ia., 83, the supreme court of Iowa say: "An action to set aside a fraudulent conveyance of real estate is barred in five years after the fraud is discovered, and it is conclusively presumed to be discovered when the fraudulent conveyance is filed for record." (See also *Humphreys v. Mattoon*, 43 Ia., 556.)

In *Rogers v. Brown*, 61 Mo., 187, the supreme court of Missouri say: "They (the appellees) are chargeable by law with notice of the recorded conveyance. * * * The statute must be held to have commenced to run against them on the 26th day of October, 1857, the day on which the deed was recorded."

In *Cockrell's Ex'r v. Cockrell*, 15 S. W. Rep., 1119, a creditor's bill, the supreme court of Kentucky say: "The

statute of limitations was pleaded and the reply attempted to avoid it by saying that the appellant * * did not know that the deed was made and recorded. This is no excuse for the delay, and besides the land was conveyed and the deed recorded in the county where the debtor lived, and where the suit was instituted, and all the party had to do was to examine the county records, and there the deed could have been found."

The foregoing facts, looked at in the light of the authorities just quoted, were sufficient to put appellees on an inquiry, which, if pursued, would have led to the discovery of the fraud in the conveyance by the Coopers to Richards, and appellees must be held to have discovered that fraud October 28, 1884. The statute then began to run in favor of Mrs. Cooper's grantees and against her and her creditors.

Appellees, however, claim that their cause of action did not accrue until they recovered their judgments against Mrs. Cooper. What was appellee's cause of action? Evidently the fraudulent conveyance between the appellants. When did it accrue? When *discovered*, and it was *discovered* when appellees were in possession of sufficient facts to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would have led to the discovery that the conveyance to Richards was fraudulent. What facts were in possession of appellees October 28, 1884? The fraudulent conveyance from the Coopers to Richards was of record. The appellees and appellants all resided in the same county and city. Appellees knew that Mrs. Cooper had failed in business and was insolvent. The appellees knew that the Coopers continued in possession of the property conveyed to Richards. Appellees had been told by Mrs. Cooper that she had conveyed her property to Richards to defeat her creditors, or some of them. These facts were sufficient for appellees to have maintained an attachment suit against this property October 28, 1884, whether their claims against her were due

or not, and their right to relief against this fraudulent conveyance was an accrued right when they could, by *any form of action*, set the courts in motion to relieve them from this fraud.

Were the appellees limited to a *creditor's bill* in order to obtain relief from this fraudulent conveyance? We think not. Appellees could have attached the property on the ground that it was fraudulently conveyed to Richards for the purpose of delaying Mrs. Cooper's creditors. (Civil Code, sec. 198, subd. 8; *Keene v. Sallenbach*, 15 Neb., 200; *Brown v. Brown*, 11 S. W. Rep. [Ky.], 4; *Rogers v. Brown*, 61 Mo., 187.)

For this court to hold that appellees' cause of action did not accrue—the fraud discovered—until appellees were in a position to file a creditor's bill, would be to judicially amend this statute and leave it to the discretion of creditors to fix the time of the accrual of their cause of action by hastening or delaying the recovery of judgment. A case might arise where, by reason of the debtor being a non-resident, a personal judgment could not be obtained. In such case would appellees have no cause of action for relief on the ground of fraud until the debtor became a resident and a personal judgment was rendered against him? It is an old maxim that for every wrong the law affords a remedy, but if one effectual remedy is afforded by the law the maxim is complied with.

The final contention of the appellees is, that if the October, 1884, conveyance was fraudulent, and discovered by them in such time as to make the statute of limitations a bar, yet the conveyance by Brown of lots Nos. 6 and 7 in April, 1886, to Mrs. Cooper's husband gave appellees a new cause of action. In this view we concur. From the evidence of Mr. Brown in the record it appears that during the time *Richards held the title* to these lots he agreed with Mrs. Cooper that, if she would sell them, or find a purchaser for them, he would allow her as commissions what-

ever surplus remained after the satisfaction of her debt to the bank. The record does not expressly show that a purchaser was procured by Mrs. Cooper for the property, but sufficient of the lots were sold to pay her debt to the bank, and Mr. Brown, in fulfillment of Richards' agreement, conveyed these lots to Mrs. Cooper's husband at her request. Here, then, Mrs. Cooper became the owner of property which, if conveyed directly to her, appellees would have been able to levy upon. She had it conveyed to her husband for the very purpose of preventing this levy. This was a fraud; not a continuation of the old fraud of October, 1884; not a consummation of that fraud, but a *new* and *independent* one; and appellees' cause of action for relief therefrom did not accrue until the filing for record of the deed from Brown to Mr. Cooper. (See *Piper v. Hoard*, 107 N. Y., 73.) The claim of appellants, that Mr. Cooper paid anything for this property, is not supported by the evidence.

Complaint is made by appellants because the decree is silent as to said lots 8 and 9, and no account taken of taxes and interest on the Bowles mortgage paid by Mr. Cooper on lots 6 and 7. As to lots 8 and 9 we think the statute of limitations precludes appellees from questioning Cooper's title to the same. The decree of the district court will be so modified here as to dismiss the petitions and cross-petitions of appellees as to said lots 8 and 9. As to interest and taxes paid on lots 6 and 7 by Mr. Cooper, he accepted the title to these lots without consideration and for the purpose of defrauding the creditors of his wife, and is therefore in no position to ask a court of equity to relieve him from burdens he voluntarily and fraudulently assumed. A decree will be entered in this court dismissing the petitions and cross-petitions of appellees as to lots 8 and 9, block 124, in the city of Lincoln, and as thus modified the decree of the district court is in all things affirmed.

DECREE ACCORDINGLY.

Ryan, C., concurs in the affirmance of the decree of the district court.

Irvine, C.: I concur in the conclusion reached, but not in the construction given the statute of limitations. I think the statute means that in such cases the cause of action shall not be deemed to accrue until the discovery of the fraud, but not necessarily that it does accrue upon such discovery. The cause of action in this case was the right of the creditors to proceed against the fraudulent grantee, and was not complete until judgments were recovered. I therefore think that the statute began to run upon the recovery of judgments, when the creditors were for the first time in position to institute the action.