JOHN V. AINSWORTH, RECEIVER, APPELLANT, V. JOSEPH
ROUBAL ET AL., APPELLEES.

FILED OCTOBER 19, 1905.    No. 14,200.

1. Evidence examined, and *held* to show the conveyance attacked
fraudulent except as to one mortgage.

2. Creditors' Suit: LIMITATION OF ACTIONS. A party cannot maintain
an action in the nature of a creditors' suit to reach property
of his debtor fraudulently conveyed until the claim has been
reduced to judgment, and until judgment is obtained by the cred-
itor the statute of limitations will not, under ordinary cir-
cumstances, commence to run against such a suit. *Gillespie v.
Cooper*, 36 Neb. 775, so far as it holds a contrary doctrine, dis-
approved.

3. ———: ATTACHMENT. The creditor, if he chooses, may, before
reducing his claim to judgment, commence an action aided by
attachment and seize the estate fraudulently conveyed by his
debtor, and after judgment in the attachment suit he may enforce
his lien by an action in the nature of a creditors' bill. This
course may be pursued, whether the debtor is a resident of the
state or a nonresident. *Keene v. Sallenbach*, 15 Neb. 200; *Ken-
nard, Daniels & Co. v. Hollenbeck*, 17 Neb. 362; *Kimbro v. Clark*,
17 Neb. 403.

APPEAL from the district court for Dodge county: CON-
RAD HOLLENBECK, JUDGE. *Reversed with directions.*

*F. I. Foss, R. D. Brown, Courtright & Sidner, C. H.
Sloan* and *J. D. Pope*, for appellant.

*Frank Dolezal, contra.*

DUFFIE, C.

The plaintiff and appellant, who is receiver of the State
Bank of Milligan, Fillmore county, Nebraska, brought this
action against the defendants and appellees to subject cer-
tain lands in Dodge county, Nebraska, to the payment of
a judgment obtained by him against Joseph Roubal, the
record title of which stands in the name of Josephine
Roubal, wife of said Joseph. For a clear understanding

of the case it is necessary to set out somewhat in detail a history of the litigation between the parties.

In November, 1897, the plaintiff recovered judgment against Joseph Roubal in the sum of $4,700 in the district court for Fillmore county upon the bond of one Fiala, on which Roubal was surety. November 24, 1897, Joseph Roubal and wife executed a deed to James Vech, a brother-in-law, conveying to him the land in controversy in this action. November 27, 1897, the plaintiff filed a transcript of his judgment obtained in Fillmore county in the office of the clerk of the district court for Dodge county. December 9, 1897, James Vech and wife deeded the property to Louis J. Kudrna. December 10, 1897, the plaintiff caused execution to be issued on his judgment and delivered to the sheriff of Dodge county, and on the following day the sheriff levied on the real estate in controversy, and caused the same to be advertised for sale as the property of Joseph Roubal, who had during all the time remained in possession of the premises. January 21, 1898, and previous to a sale being made under the execution, Kudrna obtained an injunction from the district court for Dodge county, restraining the sheriff from proceeding to a sale under his execution. The plaintiff applied to the court to be made a party to this action, and filed an answer and cross-bill in that case, bringing in other defendants. His cross-petition was in the nature of a creditors' bill, seeking to subject the land to the payment of his judgment. April 21, 1900, a decree was entered in said action, setting aside the different transfers, and declaring the real estate to be the property of Joseph Roubal, and ordering it sold, subject to his homestead interest. The defendants in that action filed a supersedeas and took an appeal to this court. In the meantime the law action in which plaintiff's judgment had been obtained in Fillmore county was appealed to this court by the defendant Roubal, and on November 20, 1901, an opinion was filed, reversing said judgment and remanding the case for another trial. See *Fiala v. Ainsworth*, 63 Neb. 1. March 21, 1902, a second trial of

the law action was had in Fillmore county, in which the plaintiff herein obtained judgment against the defendant Joseph Roubal for the sum of $7,364.45. On the same day Joseph Roubal and his wife executed three mortgages upon the land in controversy; one to George Bauman for the sum of $661, one to Mary Vech for the sum of $1,060, and one to Frank Dolezal for the sum of $2,000. March 28, 1902, the plaintiff filed a transcript of his new judgment obtained in Fillmore county with the clerk of the district court for Dodge county. April 5, 1902, Louis J. Kudrna conveyed the land in controversy to Josephine Roubal, wife of Joseph Roubal. September 18, 1902, the decree in the injunction and creditors' bill case tried in Dodge county was reversed by this court and the case dismissed, for the reason that the judgment upon which it was based had been reversed on November 20, 1901. *Kudrna v. Ainsworth*, 65 Neb. 711. The present action was commenced in the month of March, 1903, the amended petition upon which the case was tried being filed on May 7, 1904. On the trial a decree was entered dismissing the plaintiff's petition upon the ground, as we understand, that his action was barred by the statute of limitations.

We have carefully examined the evidence contained in the record, and have arrived at the conclusion that there can be no doubt that the conveyance made by Joseph Roubal to James Vech, and the several deeds thereafter made, were for the purpose of avoiding the indebtedness due from Joseph Roubal, the plaintiff, and finally vesting title to the property in Josephine Roubal, his wife. It is unnecessary to discuss this evidence, as even a casual reading will satisfy the mind of any disinterested party that the conveyances, aside from the mortgages mentioned which will be considered later, were colorable only, and without any good faith consideration paid. This brings us to the consideration of the statute of limitations relied on by the defendants and sustained by the district court. That court evidently relied on, and felt bound by, the holding in *Gillespie v. Cooper*, 36 Neb. 775; and, if that

case is to be followed and recognized as the correct rule to be applied in actions of this character, then there is no question that the decree appealed from will have to be affirmed. The deed from Roubal to Vech was made in 1897, while this action was not commenced until 1903, six years after the making and recording of this fraudulent deed. The defendants insist that the plaintiff might have attached the land in controversy, notwithstanding the fact that he had reduced his claim to judgment prior to the fraudulent conveyance, and cite *Strickler v. Hargis,* 34 Neb. 471, in support of this contention. If we concede this to be the rule, then the holding in *Gillespie v. Cooper, supra,* if adhered to, is fatal to the plaintiff's claim. In that case it was held that an action in the nature of a creditors' bill must be commenced within four years from the discovery of the fraud. We quote from the opinion at page 790:

"Were the appellees limited to a *creditors' bill* in order to obtain relief from this fraudulent conveyance? We think not. Appellees could have attached the property on the ground that it was fraudulently conveyed to Richards for the purpose of delaying Mrs. Cooper's creditors. Code, sec. 198, subd. 8; *Keene v. Sallenbach,* 15 Neb. 200; *Brown v. Brown,* 91 Ky. 639, 11 S. W. 4; *Rogers v. Brown,* 61 Mo. 187. For this court to hold that appellees' cause of action did not accrue—the fraud discovered—until appellees were in a position to file a creditors' bill would be to judicially amend this statute and leave it to the discretion of creditors to fix the time of the accrual of their cause of action by hastening or delaying the recovery of judgment. A case might arise where, by reason of the debtor being a nonresident, a personal judgment could not be obtained. In such case would appellee have no cause of action for relief on the ground of fraud until the debtor became a resident and a personal judgment was entered against him? It is an old maxim that for every wrong the law affords a remedy, but if one effectual remedy is afforded by the law the maxim is complied with."

Upon mature consideration we are unable to agree with the conclusion reached by the learned commissioner from whose opinion we have taken the above quotation, or the reasoning by which the conclusion is arrived at, and yet we have hesitated to interfere with the law established by that case, upon the principle that it is better that a rule once announced should be permanent and certain, rather than that it should in all cases establish the technically correct rule. The principle involved is, however, of so much importance to the profession and to the people of the state, and the construction given the statute in *Gillespie v. Cooper, supra,* so radically different from our views of its true meaning, that we think it better to get back to what we believe to be the correct doctrine at the earliest date possible. It has always been the rule in this state that a suit of this nature could not be maintained until the plaintiff had reduced his claim to judgment. When he has obtained his judgment at law, he can then appeal to the equity court to assist him in removing an obstruction to the collection of that judgment by clearing up what bidders might regard as a doubtful title. From this it will be seen that the right does not accrue to the creditor to maintain a creditors' bill until after judgment; and our statute of limitation does not by its terms commence to run against any suitor in our courts until his cause of action has accrued. Section 5 of the code is as follows: "Civil actions can only be commenced within the time prescribed in this title, after the cause of action shall have accrued."

It is true that an extraordinary remedy is offered for the relief of creditors where the debtor is seeking to defraud them. An attachment may be had in such a case, whether the creditor's claim be due or not, but we might here remark that the general rule appears to be that the extraordinary remedy afforded the creditor by an attachment does nothing more than give him a lien upon the property attached, and does not entitle him to a judgment until his debt has matured. In this state the

statute provides that the plaintiff shall not have judgment until his claim is due. Code, sec. 242. By this method he may obtain a lien upon his debtor's property giving him priority over other creditors who had not been so vigilant, but his right to a judgment, in case his claim has not matured, is not at all advanced by this proceeding.

Again, it is undisputed law that a creditor who has two remedies offered him may elect which remedy he will pursue, and it is no objection that one remedy is barred by the statute, provided the remedy which he elects is not barred. *Lamb v. Clark*, 5 Pick. (Mass.) 193. In *Shipp v. Davis*, 78 Ga. 201, it is said:

"Where the creditor had an election between two rights of action for the same debt, he may, after one of them is barred, maintain a suit on the one not barred."

Let us see what would be the practicable result of the rule announced in *Gillespie v. Cooper, supra*. A, having a cause of action against B upon a note, might, upon learning that B had fraudulently transferred his property, commence an action in attachment, whether the note had matured or was not yet due. C, having a cause of action against B for a tort committed, could not obtain an attachment, his demand not being liquidated. As against A, therefore, the statute of limitation would run from the discovery of the fraud. As against C, the cause of action would commence to run only from the time of reducing his claim to judgment, or, if it should be held that it did commence to run, we would have the anomaly of the statute running against a claim upon which a right of action had not accrued to the plaintiff. The principle for which we are contending is well expressed by the supreme court of South Carolina in *Suber v. Chandler*, 18 S. Car. 526, in the following language:

"This principle, unless authority beyond question the other way can be found, ought to control in a case like this. It is claimed that these principles cannot apply in the face of the positive decision in this state that the

statute commences at the discovery of the fraud. This doc-
trine is not denied, but it must be taken in connection
with that other principle, also held in this state, that to
give currency to the statute there must be a plaintiff
who can sue and a defendant who can be sued. *Bugg v.
Summer*, 1 McMul. *333. The discovery of the fraud by a
party who cannot sue on account of it amounts to no dis-
covery. These are cases where an action can be com-
menced the moment the fraud is discovered, and to such
cases this doctrine is properly applicable, but in those
cases where this discovery gives no right of action at the
time, the reason of its application entirely fails."

We apprehend, also, that the reasoning in *Gillespie v.
Cooper, supra,* is unsound in its statement that fraud is
the cause of action for which an attachment may be is-
sued. In our view, the fraud of the debtor is not the
cause of action. The cause of action is the debt due from
the defendant to the plaintiff. That the defendant has
fraudulently conveyed his property does not give the plain-
tiff a cause of action of which he is not already pos-
sessed. It merely gives him the right to sue on an un-
matured claim, if his debt has not matured, and to have
the assistance of a writ of attachment because of the
defendant's fraudulent act. The cause of action is still
the note or contract, the debt upon which the defendant is
liable. The defendant's fraudulent acts merely give the
plaintiff a remedy for securing his demand. As before
remarked, it is true that the plaintiff, because of the fraud
of the defendant, may have the assistance of a writ of
attachment to secure his claim before judgment, but this
right is given him as a security only, and not as a new
cause of action, nor can it be used by one not having
a cause of action in aid of which it may be invoked. After
judgment at law, the creditor may pursue the following
remedies: If he has not attached, he may file his creditors'
bill against the fraudulent vendee of his debtor's estate.
If he has attached the estate fraudulently conveyed, he
may, if he elects so to do, sell the attached property and,

after sale and deed obtained, bring his action to quiet title against the fraudulent grantee; or he may, if he prefers, before the sale, call upon a court of equity to cancel the fraudulent deed, remove the obstruction, and declare the fraudulent conveyance void as to him. In the latter case the equity court is merely lending its assistance to the legal tribunal to enforce its judgment. The equitable action in such case is merely ancillary to the legal action, and in aid thereof. The fraudulent vendor is not a necessary party to any of these equitable proceedings, unless he has attempted to reserve some right or interest to himself in the estate conveyed; but the fraudulent grantee is an indispensable party, as it is the deed under which he claims that is attacked for fraud; and it is in one or the other of these actions that the plaintiff's cause of action is grounded upon the fraud of his debtor in conveying the estate sought to be reached, and of the vendee in accepting the conveyance. Not until the conveyance is attacked by a bill in equity is the plaintiff's cause of action based upon fraud; then for the first time is fraud his cause of action, and then for the first time can the statute of limitations of four years, in which an action for fraud is barred, be pleaded as a defense to such cause of action.

There are other reasons which appeal to the legal mind for refusing our assent to the doctrine of *Gillespie v. Cooper, supra.* As before stated, the creditor who has two remedies may pursue whichever remedy he may elect, and he is certainly entitled to pursue the ordinary and usual remedy afforded him by the laws of the state, and is not called upon to adopt the extraordinary and hazardous remedy of attaching his debtor's property, unless he believes it for his best interest so to do in order to gain a preference over other creditors. So, also, is he entitled, if he so desires, to pursue a remedy that gives him the right to try the question of fraud on issue duly made by the pleadings, and to cross-examine the witnesses of his adversary; in other words, to have the benefit of a formal trial to the court on the issue made, which is denied him

on a motion to dissolve his attachment, if the defendant elects to pursue that course. His failure to pursue this extraordinary remedy will not, in our opinion, start the running of the statute of limitations against a remedy which had not then matured. The authorities are practically agreed that the statute of limitations does not commence to run against a creditors' bill until the creditor has reduced his claim to judgment and exhausted his legal remedies. *Rose v. Dunklee,* 12 Colo. App. 403, 56 Pac. 342; *Mickel v. Walraven,* 92 Ia. 423, 60 N. W. 633; *Gates v. Andrews,* 37 N. Y. 657; *Weaver v. Haviland,* 142 N. Y. 534; *Reynolds v. Lansford,* 16 Tex. 286; *Wilson v. Buchanan,* 7 Grat. (Va.) 334; Bump, Fraudulent Conveyances (3d ed.), 547; *Brown v. Campbell,* 100 Cal. 635, 38 Am. St. Rep. 314; *Harrell v. Kea,* 37 S. Car. 369, 16 S. E. 42. Being convinced that the doctrine announced in *Gillespie v. Cooper, supra,* as follows: "The statute begins to run against a creditor from the discovery of the fraudulent act on the part of his debtor, whether the creditor's claim has been reduced to judgment or not, as he is not limited to a creditors' bill in order to obtain relief on the ground of fraud, but may attach the property fraudulently conveyed"—was announced without sufficient consideration, the same is overruled.

The defendants also relied upon the case of *State v. Osborn,* 143 Ind. 671, in which the following was held: "That judgment against a debtor was not rendered until after the expiration of the six years within which a conveyance by the debtor, fraudulent as to his creditors, could be attacked, due to the fact that the debtor persistently fought the action, does not entitle the creditor to sue to set aside such conveyance after the expiration of such time." (42 N. E. 921.) We do not think that this head-note fairly reflects the reasoning of the court. A careful reading of the opinion discloses that judgment was obtained against the defendant long prior to the expiration of the six years limited by statute for commencing an action upon the ground of fraud. The de-

fendant appealed the case to the supreme court, but did not supersede the judgment, and the creditors' suit could have been commenced immediately upon obtaining judg-·ment, instead of waiting two or three years, as was done, for the opinion of the supreme court, and during which time the statute barred the action. In that case the plaintiff had every opportunity to prosecute his action before the statute intervened, whereas, in the present case, more than ordinary diligence has been shown by the plaintiff in pressing his demand and seeking the assistance of the court to enforce it. We do not wish to be understood as holding that a party having a matured claim may postpone the running of the statute of limitation at his pleasure by neglecting to bring suit within a reasonable time after discovering the fraud of his debtor. Equity requires a creditor to be active and diligent. In *Earl of Deloraine v. Browne,* 3 Brown, Ch. (Eng.) *633, *640, it is said that nothing will cause a court of equity to act "but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing." And we quite agree with the supreme court of Iowa, expressed in *Mickel v. Walraven, supra,* that "when, by reason of the laches and delay of the complainant, it has become doubtful whether the other parties can produce the evidence which is necessary to a fair presentation of the case on their part, or when it appears that they have been misled to their disadvantage by such conduct, a court of equity will deal with the remedy as barred. In such cases the court acts in obedience to the spirit of the statutes of limitations, and adopts the reasons and principles on which they are founded, rather than their literal requirements."

Coming now to the mortgage liens upon the land, it is shown that the mortgage executed to Dolezal was for services rendered in the various suits growing out of this transaction and expenses incurred therein. We incline to the belief that the amount of his mortgage is not excessive for the services performed, and that he is entitled to a

first lien upon the property.  The evidence relating to the consideration for the mortgages of Mrs. Vech and George Bauman is very unsatisfactory.   Mrs. Vech, who is a sister-in-law of Joseph Roubal, was for a long time a member of his family.  It is claimed that she loaned him $500 some 20 years or more previous to the making of this mortgage.  No note or other evidence of indebtedness was given at the time, nor intervening the loan and the making of the mortgage.  No memorandum appears to have been kept of the state of the account between them, and, while it may be true that the money was furnished by Mrs. Vech, none of the circumstances disclosed tend to show that it was regarded as a loan.  Bauman is a nephew of Joseph Roubal, and was about 18 years of age at the time it was claimed he furnished money to Mrs. Roubal to purchase certain property offered at sheriff's sale.   There is no pretense that he had money, except what was earned by working out on a farm.  No note was given or memorandum made of the amount claimed to have been furnished by him at the time.   The circumstances do not impress us with the belief that the consideration was in fact advanced out of his own means. As between the parties these mortgages are good, but we think that they ought to be postponed to the claims of the plaintiff.

We recommend, therefore, that the decree of the district court be reversed, and that a decree be entered subjecting the land in dispute, after setting aside the homestead interest of Joseph Roubal and wife, to the payment of the plaintiff's judment, after first satisfying the mortgage of the defendant Dolezal, and that the cause be remanded to the district court for that purpose.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed, and the cause remanded to the district court, with directions

to enter a decree subjecting the land in dispute, after setting aside the homestead interest of Joseph Roubal and wife, to the payment of the plaintiff's judgment, after first satisfying the mortgage of the defendant Dolezal.

REVERSED.