## HARRELL v. KEA.

1. FINDINGS OF FACT—SCOPE OF EXCEPTIONS.—Whether a deed was executed with intent to perpetrate a fraud, considered under exceptions to so much of the decree as held that the action was barred by the statute of limitations by reason of notice had of the fraud for more than six years; but the decision not rested upon the finding of actual fraud, as there was no direct exception thereto.

2. LIMITATION OF ACTIONS—FRAUD—NOTICE.—The statute of limitations does not commence to run in favor of actual fraud until the party defrauded acquires either knowledge of facts, which would establish such fraud, or the means of acquiring such knowledge, by the use of due diligence. Notice that a person was living on the land, and who said that the debtor had given it to her, and that plaintiff had afterwards brought action on

47—37

the debt, were not of themselves sufficient to charge the plaintiff creditor with notice that the debtor had conveyed his land to this defendant with intent to defraud his creditors, there being some evidence of a valuable consideration, and none of any suit pending or threatened, or of any expressed intent to defraud, or that the debtor had not personal property enough to pay all of his debts.

3. IBID.—IBID.—MATTERS NOT CONSIDERED ON CIRCUIT.—But if the only fraud committed was constructive fraud arising from a voluntary conveyance by the debtor, then the currency of the statute of limitations starts from the return of *nulla bona*, and not from discovery. And this question not having been passed upon on Circuit, and there being some evidence to show a valuable consideration, the cause is remanded for a determination of the case in this aspect.

4. HOMESTEAD—LAND APPURTENANT.—Where a debtor conveyed to another, in 1873, land on which he had once resided, but from which he had removed away to an adjoining tract of land belonging to his wife, and then rented his own land to his son, the land so conveyed was not appurtenant to the family homestead of the debtor, and, therefore, was not exempt as his homestead, under the Constitution of 1868, prior to its amendment in 1880.

Before FRASER, J., Darlington, March, 1891.

This was an action by I. M. Harrell against James Kea and Mary Ellen Parker. The opinion states the case.

*Mr. R. W. Boyd,* for appellant.

*Mr. E. K. Dargan,* for Mrs. Parker, respondent.

October 15, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The object of this action is to set aside a deed made by the defendant, James Kea, to his co-defendant, Mary Ellen, and to subject the land thereby conveyed to the payment of a debt due by said James Kea to the plaintiff, upon which judgment was obtained subsequent to the execution of said deed. The plaintiff, in the same paragraph of his complaint, charges both actual and constructive fraud. The answer of the defendant, Mary Ellen, while denying the fraud charged, sets up the statute of limitations, and also alleges that the land conveyed by the deed was the homestead of her co-defendant, James Kea, and, therefore, not liable

for his debts. The Circuit Judge, in his decree, says: "I am inclined to think that while Mrs. Parker, the defendant, at the date of the conveyance the wife of a son of the co-defendant, James Kea, did not know, in fact, the true character of the transaction, the conveyance was without any sufficient consideration, and intended, at least by James Kea, the father, and, perhaps, his son, to defeat the claims of creditors, and she can have no equities superior to them, as she paid no consideration." But he adds: "I think, however, that this case depends upon the question of homestead and the statute of limitations." And after finding, as matter of fact, that plaintiff had notice of the actual fraud charged more than six years before the commencement of this action, and that the land in question constituted a part of said James Kea's homestead, he rendered judgment, dismissing the complaint upon those two grounds.

From this judgment plaintiff appeals upon the several grounds set out in the record, which practically raise two general questions: 1st. Whether there was error in sustaining the plea of the statute of limitations. 2d. Whether there was error in holding that the land in question constituted a part of James Kea's homestead.

A brief statement of the facts, as they appear in the "Case," will be necessary for a proper solution of these questions. It seems that said James Kea was indebted to the plaintiff on a note executed 2d of December, 1869, upon which the plaintiff recovered judgment on the 14th of February, 1877, and that the execution issued thereon was returned wholly unsatisfied on the 23d of February, 1882, and that this action was commenced on the 17th of October, 1885. In the meantime, however, to wit, on the 4th of January, 1873, the said James Kea conveyed the land in question to the defendant, Mary Ellen, who was then the wife of Kinchon Kea, the son of said James Kea; but he having died, she subsequently intermarried with one Parker, and the action was continued in her name, as it appears in the title of the case. It seems that James Kea at one time lived upon the land in question, but several years before the war removed to an adjoining tract of land belong-

ing to his wife, where he has ever since resided. Upon the marriage of his son, the young couple were put in possession of the land, upon what terms does not clearly appear, as there is some conflict in the testimony as to whether they were to pay rent prior to the conveyance to said Mary Ellen.

The deed to her purports to be in consideration of love and affection, as well as the nominal sum of fifteen dollars, though James Kea says in his testimony that the understanding with his son was, that he was to pay two hundred and fifty dollars, which they estimated to be one-half of the fair value of the land, and Mrs. Parker, in her testimony, says that a bale of cotton, which yielded upwards of sixty dollars, was delivered to James Kea by her former husband as a payment on the land, and not as rent, as James Kea had testified. This deed, though executed in 1873, was not recorded until the 4th of March, 1881. The plaintiff testified that he knew nothing about the execution of this deed until some time in 1885, when, owing to some rumors that he heard, he examined the register's office, and finding the deed on record, he soon afterwards commenced this action. But Mrs. Parker says, that, in 1873, she informed the plaintiff that her father-in-law had given her the land, and, therefore, she paid no rent for it. This, however, the plaintiff denies in his testimony. There seems to be no dispute as to the fact, that when the deed in question was executed, James Kea owned no other land; and this fact seems to have been known to plaintiff, who was a near neighbor. There is no evidence, so far as we can discover, that the land in question was ever used as an appurtenance to the land to which James Kea removed—his wife's place—and, on the contrary, it was rented, according to his version, to his son before it was conveyed to the son's wife.

Inasmuch as the facts found by the Circuit Judge are not separately and distinctly stated, as is directed by the Code, we have felt some difficulty in ascertaining precisely what were his findings of fact. In the passage quoted above from his decree, the judge seemed inclined to think that the deed was made with intent to defraud creditors, of which, however, the defendant, Mary Ellen, had no knowledge, yet, as he immedi-

ately adds that he thinks the case turns upon the question of homestead and of the statute of limitations, we cannot regard what was there said as a finding that there was actual fraud. But as, in a subsequent part of his decree, he does say, "Where, however, as in this case, there has been, as alleged in the complaint, 'the purpose and intent to evade the payment of his debt to plaintiff, and his other debts,' the statute begins to run at the discovery of the fraud, or when the creditor has notice of it, or of such facts as would put a prudent man of business on the inquiry," and proceeds to hold that the plaintiff had such notice more than six years before the commencement of the action, which, for that reason, was barred by the statute, we are bound to construe the decree as finding that there was actual fraud in the inception of the transaction.

Now, while there is no direct exception to this finding of fact, yet as the conclusion reached—that the action was barred by the statute (which conclusion is excepted to)—rests necessarily not only upon the fact that there was actual fraud, but also upon the finding, that plaintiff had notice of the fraud more than six years before the action was commenced, which last mentioned finding—of notice—is expressly excepted to, it would seem to be not only legitimate, but proper, for us to consider whether there was any actual fraud, and, if so, whether plaintiff had notice of it.

There is nothing in the decree to indicate the grounds upon which the Circuit Judge rested his conclusion that there was actual fraud, and it is somewhat difficult to discover from the testimony the grounds for such a conclusion. All that there appears is that James Kea, being indebted at the time to a small amount, conveyed to his daughter-in-law soon after her marriage the tract of land in question, being all of the land then owned by him, by a deed purporting on its face to be a voluntary deed, but which, there is testimony to show, was, in fact, based upon a valuable consideration. There is no evidence that James Kea had been sued, or was even threatened with suit at the time, or that he ever made any declaration of any intent to defeat, or delay, or hinder his creditors, or ever said anything from which such an intent could be inferred. Nor

was there any evidence that James Kea had no other property *at the time;* for while it is true that the evidence shows that he had no other land, he might, for all that appears, have had sufficient personal property to pay all of his debts. This, therefore, is not like the case of *McGowan* v. *Hitt*, 16 S. C.; 602, where a husband, being largely in debt at the time, upon the eve of his marriage conveyed every particle of property which he owned to his intended wife. As is said in *Suber* v. *Chandler*, 18 S. C., at page 528–9 : "It cannot be contended successfully that a voluntary conveyance without consideration, a gift, is necessarily fraudulent, although made by one in debt at the time." True, subsequent events may convert an act, free from any moral wrong, into a *legal or constructive fraud;* but until such events occur, it cannot be said that there is any fraud of any kind in the simple fact that one who is in debt at the time has made a voluntary conveyance of his property. To taint such an act with actual, moral fraud, there must be other facts or circumstances tending to show that such conveyance was made with intent to hinder, delay, or defeat creditors. It does not seem to us, therefore, that there was any sufficient proof of actual fraud in this case. But as there was no exception *directly* raising this question, we will not rest our decision upon this, but will proceed to the consideration of the question whether the plaintiff had notice of the actual fraud charged more than six years before the commencement of this action, which is directly raised by one of the exceptions.

While the doctrine is well settled, that, in cases of this kind, the statute will commence to run from the discovery of the fraud, there does not seem to be entire harmony in the cases prior to the Code as to what will constitute such notice as will give currency to the statute. In *Shannon* v. *White*, 6 Rich. Eq., 101, we find the following language : "On the trial, then, of this question of notice, it was incumbent upon the defendant to prove that the plaintiff had notice of the fraud more than four years prior to the filing of the bill. And here it is to be remarked that it would not be sufficient to prove that the plaintiff had a suspicion of the fraud. But it is necessary to bring home to the *defendant* (? doubtless, a misprint for

plaintiff) a knowledge of the facts constituting the fraud. Suppose some one were to tell him that a fraud had been committed; it would not be sufficient, unless he were informed of the facts constituting the fraud, or put in possession of a clew, by which, with a proper diligence, he might come to a knowledge of the facts. He would not be required to enter into a costly contest, which would end in disappointment and defeat, or to encounter a shadowy and intangible phantom, which was sure to elude his attack." But in the case of *McLure* v. *Ashby*, 7 Rich. Eq., at page 444, the rule is laid down in these words: "The notice of the fraud, the want of which will prevent the statute from running, is not alone positive information that a fraud has been actually committed. The notice will be sufficient to prevent the suspension of the statute, if it be such as would put a reasonably diligent man upon the inquiry. Nor must the aggrieved party wait until he has discovered evidence by which he may establish the fraud in a court of justice. If he has knowledge that a fraud has been committed, though that knowledge be confined to himself, he must proceed diligently; for the statute in such case will not be suspended."

Now, it is somewhat difficult to reconcile these two statements of the rule, inasmuch as the former seems to imply that mere knowledge of the fact that a fraud has been committed, without a knowledge of the facts which would establish such fraud, or the means by which such knowledge of the facts might be acquired by the use of due diligence would not be sufficient, while the latter seems to imply that mere knowledge that a fraud had been committed would be sufficient. But, fortunately, we need not attempt to reconcile these apparently conflicting statements of the rule, as the whole matter has been taken out of the domain of judicial exposition, and made the subject of express legislative enactment, by section 112 of the Code of Procedure, and Mr. Justice McGowan, as the organ of this court, in construing that section, in the case of *Beattie* v. *Pool*, 13 S. C., 379, has expressly approved of the rule as laid down in *Shannon* v. *White, supra.* It seems to us, therefore, that the Circuit Judge erred in concluding "that plaintiff had notice, actual or constructive, more than six years before the com-

mencement of this action of the fraud complained of in this case, and that his action was barred by the statute of limitations," simply because he knew that as far back as 1873 Mrs. Parker and her first husband were living on the land; that she told plaintiff that James Kea had given her the land; and that plaintiff was a suing creditor in 1876.

It will be observed, however, that the plaintiff, in his complaint, bases his claim for relief upon constructive, as well as actual, fraud, which constitute separate and distinct causes of action, depending upon different principles and to be established by different proofs. If there was actual fraud, the right of action accrued as soon as the deed was made, and would be barred by the statute, by the lapse of six years from the discovery of the fraud, under the principles established by the case of *Miller* v. *Hughes*, 33 S. C., 530; but if there was no actual, but simply constructive, fraud, then the right of action would not accrue until judgment had been recovered and the execution had been returned *nulla bona*. *Suber* v. *Chandler*, 18 S. C., 526. Now, as the execution was not returned *nulla bona* until the 23d of February, 1882, and the action was commenced on the 17th of October, 1885, it is quite clear that if the action be regarded as based upon the constructive fraud, it was not barred by the statute. But as the Circuit Judge does not seem to have considered the case in this aspect, and as there is some evidence tending to show that there was a valuable consideration, upon which there is no distinct finding, we think the case should go back for a new trial, as an action based upon constructive fraud merely; for, as will presently be seen, we do not think the other ground upon which the Circuit Judge based his judgment can be sustained.

As to the remaining ground, it seems to be conceded, and we think properly conceded, that the homestead question should be determined by the law as it stood in 1873, when the land was conveyed to Mrs. Parker. Under that law, or rather constitutional provision, the homestead exemption could not, as under the present law, be claimed in *any* land, but only in "the family homestead * * * consisting of dwelling house, out-buildings, and land appurte-

nant." Now, as the land here in question was clearly not the family homestead or dwelling house, &c., of the debtor, the only question is, whether it was appurtenant to such homestead. Now, while it may be true that this land once constituted the family homestead of Kea, the judgment debtor, yet, when he abandoned it many years ago, and acquired another homestead upon a different tract of land, which he could do, as shown by the case of *Norton* v. *Bradham,* 21 S. C., 375, even though the title thereto was in his wife, the land in question could no longer be said to be his homestead. We do not find any evidence whatever tending to show that the land in question was appurtenant to the family homestead of the judgment debtor. On the contrary, what little evidence there is upon the subject would seem to show that it was not appurtenant, but was rented out to another person, and was not used in connection with the family homestead at the time the deed was made. In the case of *Riley* v. *Gaines,* 14 S. C., 454, there was evidence, that the land in which the exemption was allowed, not only adjoined the land upon which the debtor resided, but was appurtenant thereto and used by him in connection therewith, while here there is no such evidence. That case, therefore, does not apply.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for the purpose of carrying out the views herein announced.