8917

TUCKER *ET AL*. v WEATHERSBEE *ET AL*.

(82 S. E. 638.)

FRAUDULENT CONVEYANCES. APPEAL AND ERROR. RESULTING TRUSTS. EVIDENCE. ADVERSE POSSESSION. LIMITATION OF ACTIONS. NOTICE. LACHES.

1. Where certain real property was conveyed by the vendor to a debtor's wife and she paid the purchase price out of her own separate funds, there was no resulting trust in favor of the husband which could be enforced by his creditors.

2. Where a husband conveyed certain real property to his wife, for an adequate consideration which she paid to him from her separate funds, and at the time of the transaction there were no suits pending or threatening against the husband by his creditors, the transaction was valid and could not be vacated by creditors subsequently obtaining judgment against the husband, on the ground that the conveyance was for the purpose of hindering, delaying, or defeating collection of their claims; there being no evidence of an intention to defraud.

3. Where a conveyance between relatives, such as husband and wife, is attacked as a fraud on the grantor's creditors, the burden is on the grantee to establish good faith by the fullest, clearest, and most satisfactory evidence.

4. Adverse possession arises only in controversies between parties seeking to recover possession of real property where, during the existence of the adverse possession, they had legal right in them to bring the action, and is therefore no defense to a suit in equity by creditors to set aside alleged fraudulent conveyances.

5. A suit in equity to set aside alleged fraudulent conveyances is within the six-year statute of limitations (Code Civ. Proc., section 137, subd. 6), and is barred within six years after creditors had knowledge of facts sufficient to put them on inquiry which, if developed, would have disclosed the alleged fraud.

6. Where certain alleged fraudulent conveyances were made in 1894 and 1896 and valuable improvements were placed on the property by the vendee, and the making of the conveyances could have been immediately ascertained by the exercise of the slightest diligence, creditors of the husband of the grantee were barred by laches from maintaining a suit instituted in 1910 to have the conveyances set aside.

Before SPAIN, J., Barnwell, April, 1913.    Affirmed.

Action by George H. Tucker, Earl Sloan and Mary S. Sloan, administrator and administratrix of the estate of J. B. F. Sloan, assignees of the Edisto Phosphate Company, and J. D. Malsby, plaintiffs, against R. A. Weathersbee and E. E. Weathersbee, defendants.

The Circuit decree was as follows:

FOOTNOTE.—As to the running of the statute of limitations against actions to set aside fraudulent conveyances, see note in 4 Am. & Eng. Ann. Cases 1098; also, *Eigleberger* v. *Kibler,* 10 S. C. Eq. (1 Hill Eq.) 113; *Shannon* v. *White,* 27 S. C. Eq. (6 Rich. Eq.) 96; *Croft* v. *Arthur,* 3 S. C. Eq. (3 DeS.) 228; *Means* v. *Feaster,* 4 S. C. 249; *Richardson* v. *Mounce,* 19 S. C. 477; *McLure* v. *Ashby,* 28 S. C. Eq. (7 Rich. Eq.) 430; *Lott* v. *DeGraffenreid,* 31 S. C. Eq. (10 Rich. Eq.) 346; *McSween* v. *McCown,* 23 S. C. 342; *Harrell* v. *Kea,* 37 S. C. 369, 16 S. E. 42. As to the effect of public records as notice which will set statute of limitations running against action based upon fraud, see *Lott* v. *DeGraffenreid,* 31 S. C. Eq. (10 Rich. Eq.) 353; *Suber* v. *Chandler,* 18 S. C. 526, and note in 22 L. R. A. (N. S.) 208.

Succinctly stated, the pleadings developed an action brought by the owners of judgments, as plaintiffs, against one of the defendants, R. A. Weathersbee, to be set aside as fraudulent, under the statute of Elizabeth, as recognized at common law two deeds, one made by R. A. Weathersbee, a husband, to his codefendant, E. E. Weathersbee, his wife, on November the 5th, 1894, said deed conveying what is called the Jack Ashley lot; and another deed made to the wife, not by the husband, but by F. N. K. Bailey, on October 24, 1896, and conveying what is called the "Hotel lot." Both of these lots are in the town of Williston, on the line of the Southern Railway between Augusta and Charleston, in the county of Barnwell, a town of several hundred inhabitants. The charge as to both lots is that these conveyances were fraudulent, in that they were made to delay, hinder and defeat the creditors of R. A. Weathersbee; and as to the Hotel lot, that while the deed was made by a stranger to the wife, the purchase money was paid by the husband, and it is claimed that a resulting trust arose to the husband and that the property should be declared the property of the husband, and subject to the judgment of the plaintiffs and such other creditors of the husband who should come in and contribute to the expense of the proceedings. It seems that no other creditors have come in and contributed to the expenses of the proceedings. It seems that no other creditors have come in, and that the estate of Sloan, the assignee of the fertilizer company, and Malsby are the only creditors of the husband who are pushing the contention. The answer of the defendant, E. E. Weathersbee, the wife, denies the fraud charged; sets up the strict statute of limitations of ten years as to both tracts and claims the same by adverse possession; and also pleads the six years statute as to the alleged fraud.

As to the conveyances from Bailey to the wife of the Hotel lot, dated October 24th, 1896, there is not a tittle

of proof that any money of the husband went to pay the consideration of said deed, but there is ample and complete proof that the consideration was paid by the wife, named as the grantee in the deed, with money loaned to her by her brother, C. J. Owens, and that the improvements, amounting to some $5,000, placed thereon from time to time, were made by her, in part by money borrowed and in part by money made by her own thrift and energy as a hotel keeper. There is no testimony to show that this deed was made to delay, hinder and defeat the creditors of R. A. Weathersbee; and I find as a matter of fact that the deed from Bailey to the wife conveyed to her, free from fraud, a fee simple title, and that said property is hers, free and discharged from any claims of any of the creditors of the husband, R. A. Weathersbee. There could be no resulting trust unless it was shown by clear evidence that the purchase price was paid by the husband, he being the common debtor of the creditors pressing this controversy.

As to the conveyance from the husband to the wife of the Jack Ashley lot, on November the 5th, 1894, I find as a matter of fact that said conveyance was made at a full, fair and adequate price. This is shown by the testimony of the witnesses of the defendant, and there is no testimony to the controversy on behalf of the plaintiffs. I further find that at the time this conveyance was made, the testimony does not disclose the fact that any suits were threatened against the husband or the partnership of A. J. Weathersbee & Son, in which he was concerned, or that any suits were pending against him, though it seems that afterwards judgments were obtained against him. I further find that the purchase price was paid by the wife, by money which she borrowed from her father. This is testified to by her and not contradicted or rebutted by any fact or circumstance, and the improvements made on this property, amounting to some $3,000, in the shape

of brick stores, were made by her with money derived from other sources and from her own thrift and energy, notably from the sale of some property to Sprawls, which she purchased at a low price at public sale from the sheriff of Barnwell county as the property of her husband, the money paid to her by Sprawls amounting to $1,200. Under these findings of fact and all of the testimony as to the facts and circumstances surrounding this transaction, the condition of the debtor husband, R. A. Weathersbee, and the condition of the grantee, his wife, I conclude as a matter of fact, that said deed from the husband to the wife is free from any charge of hindering, delaying and defeating the creditors of R. A. Weathersbee, and that said deed vested in said wife a fee simple title to said Jack Ashley lot, free and discharged from the claims of the creditors of said R. A. Weathersbee who are pressing this controversy.

The law upon this subject is clear and plain and is sustained by the authorities referred to by the counsel for the plaintiffs, and amounts to this: "That even if there was valuable consideration for a deed, yet if the deed was made, with the intent on the part of both parties, to defeat, delay and hinder their creditors in the collection of their demands," the law would not hold it valid. *Lowry* v. *Pinson*, 18 S. C. L. (2d Bailey) 324; *Archer* v. *Long*, 32 S. C. 186, 11 S. E. 86.

As to transactions between relatives, such as husband and wife, it is very plain that such relation being proven they are required to give "the fullest, clearest and most satisfactory evidence of good faith on the part of the parties concerned before it could be sustained." *Braffman* v. *Glover*, 35 S. C. 436, 14 S. E. 935.

Now, in this case, under the evidence, considering all the facts and circumstances, there is no testimony to sustain the charge of fraud. There may be some little contradictory statements in the testimony of Mrs. Weathersbee before the master under the supplementary proceed-

ings as compared with her testimony at the reference, but her testimony taken as a whole, with the exhibits accompanying the same, and the testimony of the other witnesses, and the testimony of her husband, who took the stand, gives a full, clear, and ample explanation of the entire transaction, and boiled down, the transaction is simply that of a debtor, not threatened with suit and with no suits pending against him, but in failing circumstances and in failing health, deeding to his wife, at a full and adequte price, a small lot in Williston, which has been improved considerably by that wife, openly, publicly, and notoriously claiming it as her own, and I cannot find that such transaction is a fraud, and to the contrary, I sustain the transaction under the facts and the law. The recent decision of our Supreme Court in the case of *V.-C. Chemical Company* v. *Hunter et al.,* 97 S. C. 31, 81 S. E. 190, in its contrast as to the facts in this case, is pertinent and throws lights on the transaction. In this Hunter case the transaction assailed was a deed from a brother to a sister, and against the brother at the time of the within transaction there were pending suits by creditors which were afterwards put into judgment, and other circumstances surrounding the transaction, which, considering the relationship between the grantor and the grantee of brother and sister, cast upon them the burden of proof of explaining the honesty of the transaction, but in the Hunter case they did not take the stand and explain the consideration and the honesty of the surroundings among themselves and to the world, and the Court, relying upon the case of *Braffman* v. *Glover*, 35 S. C. 436, 14 S. E. 935, and other such cases, set aside the deed as a fraud. But in the case now under consideration there were no circumstances, such as the pendency of action and the holding of property by Weathersbee after the deed, which amounted to such badges of fraud as shifted the burden of proof, and Mr. and Mrs. Weathersbee took the stand and gave a full and

clear description and explanation of the reasons and facts for the transaction, which are satisfactory to the Court.

These findings, covering the contention made in the complaint and met by the general denial in the answer, disposes of the case, but it is the duty of the Court to consider and pass upon all questions raised by the pleadings and the evidence.

The contention raised by the answer of Mrs. Weathersbee, that she has been in open, notorious and adverse possession of the property in question for ten years and her plea of the strict statute of limitations for ten years cannot be sustained. Adverse possession arises only in controversies between parties seeking to recover possession of real estate where during the existence of the adverse possession they had legal title in them to bring the action, whereas this action is an equitable action by creditors to set aside in equity alleged fraudulent conveyances.

The next defense set up by Mrs. Weathersbee is based upon the six-year statute of limitations, under subdivision 6 of section 137, Code of Civil Procedure, because, as is alleged, an action in equity is barred within six years if the creditors had knowledge of facts sufficient to put them on inquiry, which would have developed the facts which they call a fraud. Or, in other words, knowledge of such facts as would have led to the knowledge of the fraud if pursued with reasonable diligence. *Smith* v. *Linder,* 77 S. C. 541, 58 S. E. 610.

I sustain this defense. Even if the facts developed and contended for as fraud constituted a fraud sufficient to set aside the deed or deeds in question, I find as a matter of fact from the testimony and the facts and circumstances surrounding the transaction in question, that the plaintiffs and their agents, had knowledge of such facts as would have led to the discovery of the facts proven if pursued with reasonable care and diligence more than six years

before the commencement of this action, and consequently the action comes within the prohibition of the statute and cannot be sustained. I do not think that the mere fact of the recording of the deed to the Jack Ashley lot, under the authorities, was sufficient notice to put the creditors on inquiry. *Means* v. *Feaster,* 4 S. C. 249.

But there were facts and circumstances existing, and which were known to the creditors, or could have been known to them by the exercise of ordinary care and diligence, which, if they had been followed up would have developed the facts in the case, and that being the case, they are barred from bringing the action. *Brown* v. *Brown,* 44 S. C. 382, 22 S. E. 412; *Wood* v. *Carpenter,* 101 U. S. 135, 25 L. Ed. 807.

Among the notorious facts and circumstances connected with the transaction, outside of the mere fact that the deed from the husband to the wife and the deed from Bailey to the wife were recorded, may be mentioned the following: The Jack Ashley lot was a small lot on a prominent street in the town of Williston, and next to the lot set off to R. A. Weathersbee as his homestead under proceedings by his creditors, which proceedings must have been known to all the creditors of Weathersbee, or by the exercise of the slightest diligence could have been known, and said proceedings would have shown the fact that there was a debtor who was claiming a homestead in a lot next door to the lot claimed by his wife, and which has been improved by the wife to the extent of $3,000. The open and notorious ownership, not only of the Jack Ashley lot, but of the hotel property, was known to the world, and the testimony shows that the agents of these judgment creditors were visitors at Williston from time to time, and that all of these matters could have been easily ascertained. Besides this, all that is relied upon in the case to establish fraud is the testimony of Mrs. Weathersbee, obtained by her exami-

nation, under proceedings supplementary to execution, which could have been instituted years ago and said facts then obtained, and the slightest diligence would have suggested that a course should be taken, and it not having been taken for more than six years before the commencement of this action, must weigh against the plaintiff under this plea of the statute of limitations.

There is another view that must be considered. The potent and salutary doctrine of equity, that laches on the part of the creditors in enforcing their claims can, and should, be applied by the Court of equity by its own motion, or upon the arguments of counsel, without being plead. *Wagener* v. *Sanders,* 62 S. C. 89, 39 S. E. 950; *Poston* v. *Ingraham,* 76 S. C. 171, 56 S. E. 780.

As stated by Chancellor Dunkin in *Smith* v. *Smith,* McMullan's Equity, page 134: "In regard to equitable titles, Courts of equity are to be considered as affected only by analogy to the statute of limitations. If a party be guilty of such laches in prosecuting his equitable title as would bar him if his title was solely at law, he shall be barred in equity." This doctrine is well sustained by other authorities. *Lott* v. *DeGraffenried,* 31 S. C. Eq. (10 Rich. Eq.) 346; *Mobley* v. *Cureton,* 2 S. C. 148; *Gregory* v. *Rhoden,* 24 S. C. 99.

Here is a case where the deeds were made, one on November 5th, 1894, the other on October 24th, 1896, and yet not until the latter part of 1910 was action brought by these creditors to set aside these transactions, notwithstanding the fact that in the meantime valuable improvements were openly and notoriously put upon this property, and it was occupied openly to the world by this wife, who was working to support her family, diligently, and known to the world as the proprietor of the property in question.

These facts and others which could be recited unquestionably show to the Court such laches as bars the plaintiffs

from the equitable relief asked in the complaint, and it is so held by the Court.

Wherefore, it is ordered, adjudged, and decreed that the complaint of the plaintiffs be, and the same is hereby, dismissed with costs.                    T. H. SPAIN,

May 17, A. D. 1913.                    Presiding Judge.

The plaintiffs appealed on the following exceptions:

1. That his Honor erred in holding that no part of the money of the husband (R. A. Weathersbee) went to pay the consideration of the deed to the Bailey lot, but that the consideration of the deed, therefore, was paid by the wife and the improvements were placed thereon by her; whereas, he should have held that the consideration paid for said lot, and the improvements thereon, was furnished by the husband, R. A. Weathersbee, and the deed made in the name of the wife as grantee to prevent its being reached by the creditors of the husband; and that said deed was made to hinder, delay, and defraud the creditors of the said R. A. Weathersbee, and his Honor erred in not so holding and decreeing.

2. That his Honor erred in holding that the testimony did not disclose the fact that any suits were threatened against the husband (R. A. Weathersbee) or the partnership in which he was concerned; whereas, the testimony disclosed, and the Court should have held, that obligations to the amount of several thousand dollars had matured and were maturing at the time of the conveyance of the Jack Ashley lot by R. A. Weathersbee to his wife, E. E. Weathersbee, and that suits were then pending against R. A. Weathersbee.

3. That his Honor erred in holding that the purchase price of the Jack Ashley lot was made by the wife to the husband by money which she had borrowed from her father, and that the improvements were made by her with money derived from other sources; whereas, the Court

should have held that said deed was absolutely without consideration and was made by the said R. A. Weathersbee to his wife, E. E. Weathersbee, for the purpose of hindering, delaying and defrauding his creditors, whose obligations had then, or were then, maturing, and that he was then in failing circumstances and insolvent, of which his wife had notice.

4. That his Honor erred in holding that the deed from the husband (R. A. Weathersbee) to his wife (E. E. Weathersbee) is free from any charge of hindering, delaying, or defrauding the creditors of R. A. Weathersbee, and that said deed vested in the said wife a fee simple title to the said Jack Ashley lot, free and discharged from the claims of the creditors of the said R. A. Weathersbee who are pressing this controversy; whereas, his Honor should have held (a) that even if a full and fair price had been paid by the wife to the husband for said lot, the said deed was void for the reason that she had notice of his failing circumstances, that his creditors were pressing and said deed was made and consideration passed with the intent and purpose on the part of both parties to place the said lot beyond the reach of his creditors, and with the intent to hinder, delay, and defraud creditors of the said R. A. Weathersbee.

5. That his Honor erred in sustaining the defense set up by Mrs. Weathersbee based upon the six-year statute of limitations, under subdivision 6, section 137 of the Code, as is alleged, an action in equity is barred within six years if the creditors had notice of facts sufficient to put them on inquiry which would have developed the facts which they call fraud; whereas, his Honor should not have sustained said defense, but should have held that there was no testimony showing, or tending to show, that the plaintiffs had any knowledge more than six years before the commencement of this action of such facts as would have led

to the discovery of the facts proven with reasonable diligence and care.

6. That his Honor erred in holding that the plaintiff had knowledge or notice of facts sufficient to put them on inquiry which would have developed the facts of the alleged fraud more than six years before the commencement of this action and are therefore barred.

7. That his Honor erred in holding that the plaintiffs were barred by laches in enforcing their claim or action against the defendants.

8. That his Honor erred in holding that the facts in this case show to the Court such laches as bars the plaintiffs from the equitable relief asked for in the complaint; whereas, his Honor should have held that the plaintiffs not having knowledge or information sufficient to put them on inquiry more than six years before the commencement of this action would not be barred under the statute of limitations on the law side of the Court, therefore, they are not barred by laches in this proceeding on the equitable side of the Court, having brought their action within the time required by the statute.

9. That it was error to hold that the plaintiffs could be barred in this action both by the six year-statute of limitations and by laches.

10. That it was error to hold that one is required to resort to judicial process to discover facts constituting fraud; whereas, he should have held that there were no facts proven in this case sufficient to put plaintiffs, as reasonable people, on inquiry, and should such facts have appeared from the testimony it was also apparent that there was no source from which they could derive the information of the facts other than from the defendants, and they being hostile to the plaintiffs, as appears from the testimony, no information could have been derived from them other than by judicial process, and the plaintiffs had a right, under the statute of limitations, to make a judicial

inquiry at any time during the life of their judgment, and his Honor should have so held.

11. That it appearing that R. A. Weathersbee was in failing circumstances, owing large sums of money, without visible means sufficient to pay the same, and having conveyed to his wife, and it appearing that judgments soon thereafter having been recovered to the amount of thousands of dollars, the burden of proof then shifted from the plaintiffs to the defendants, and Mrs. E. E. Weathersbee, the wife of R. A. Weathersbee, was then required to make a full and clear showing (1) that she had a separate estate, or means of acquiring property, and (2) that she paid a full and fair price for the property and was without knowledge or information sufficient to put her upon inquiry that her husband was conveying to her his property for the purpose of hindering and delaying his creditors, and his Honor should have so held.

12. That the defendants did not show fully and clearly that the defendant, Mrs. E. E. Weathersbee, had a separate estate, or adequate means with which to acquire this property, and it was not shown that she was without knowledge of the straightened circumstances of her husband, R. A. Weathersbee, at the time she acquired this property, and his Honor should have so held.

*Mr. G. M. Greene,* for appellant, submits: *Burden of proof was shifted to wife to show that property conveyed to her was paid for with funds belonging to her separate estate:* 1 Moore, Fraud. Conv., p. 39, sec. 6; 94 U. S. 580; 27 S. C. 425. *Grantee knew of her husband's intent in making conveyances:* Bump. Fraud. Conv. (4th ed.), sec. 2; 2 Bail. 324; 1 Hill 380; 97 S. C. 31. *Burden also on grantee to show that creditor had notice of facts to put him on notice more than six years before action:* 8 Rich. Eq. 155; Smith on Frauds, sec. 87; 101 U. S. 135; 44 S. C. 381. *Evidence of grantee's knowledge of fraud:*

4 S. C. 249. *Laches:* 2 S. C. 148; 6 S. C. 66; 10 S. C. 261; Smith on Frauds, sec. 249.

*Messrs. Hendersons* and *Bates & Simms,* for respondents, cite: *As to limitation of action:* 77 S. C. 541; 101 U. S. 135. *Laches:* McM. Eq. 134; 24 S. C. 99; 21 S. C. 124; 93 U. S. 55.

August 13, 1914.

The opinion of the Court was delivered by Mr. Justice Gage.

The decree of the Circuit Court herein is full and comprehensive.

The appellants have failed to shake it. For the reasons therein stated that judgment is affirmed.

Mr. Justice Fraser concurs in the result.